UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| | : | |
| SOCIALEDGE, INC. d/b/a CREATORIQ, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| - against - | : | Index No. 23 Civ. 6860 (PAE) |
| | : | |
| TRAACKR, INC. and BEN STAVELEY, | : | |
| | : | |
| Defendants. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS

Dated:   New York, New York          SLARSKEY LLC
         December 12, 2023            Renee Bea
                                      Richard Weingarten
                                      767 Third Avenue, 14th Floor
                                      New York, NY 10017
                                      (212) 658-0661
                                      *Counsel for Plaintiff*
                                      *Socialedge, Inc. d/b/a CreatorIQ*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND...............................................................................................3

    I.   Factual Allegations .............................................................................................3

       A. The Parties ...................................................................................................3

       B. Staveley Steals and Uses CreatorIQ's Trade Secrets and Confidential Information .........4

    II.  CreatorIQ's Causes of Action and Defendants' Motion ........................................6

ARGUMENT......................................................................................................................8

    I.   New York Law Applies to CreatorIQ's Non-Contractual, State Law Claims .......................8

       A. New York Has the Greatest Interest in this Litigation .................................................9

       B. Staveley's Confidentiality Agreement is Immaterial to the Court's Determination
          of the Law Applicable to CreatorIQ's Extra-contractual Claims ...................................11

       C. CreatorIQ's Assertion of Claims Under New York and California Law is Justified,
          if Not Required, Given the Dispute Regarding the Applicable Law .............................13

    II.  If the Court Cannot Conclude that New York Law Applies, it Should Deny
       Defendants' Motion and Defer its Choice-Of-Law Determination Until After Discovery....14

    III. Even if the Court Determines that California Law Applies, the Court Should Defer
       Any Finding that CUTSA Preempts CreatorIQ's State and Common Law Claims..............16

    IV. CreatorIQ Has Sufficiently Alleged a "Loss" Under the CFAA ...........................................19

CONCLUSION ...............................................................................................................24

i

# TABLE OF AUTHORITIES

<u>CASES</u>

*AEI Life LLC v. Lincoln Benefit Life Co.*,
    892 F.3d 126 (2d Cir. 2018) ................................................................8

*Agile Sourcing Partners, Inc. v. Dempsey*,
    2021 WL 4860693 (C.D. Cal. July 15, 2021)..................................................17

*Amron Int'l Diving Supply, Inc. v. Hydrolinx Diving Commc'n, Inc.*,
    2011 WL 5025178 (S.D. Cal. Oct. 21, 2011)..................................................17

*Application Grp., Inc. v. Hunter Grp., Inc.*,
    61 Cal. App. 4th 881 (Cal. Ct. App. 1998)...................................................13

*AroChem Int'l, Inc. v. Buirkle*,
    968 F.2d 266 (2d Cir. 1992) ................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................7

*Ashton al. v. Al Qaeda Islamic Army (In re Terrorist Attacks on Sept. 11, 2001)*,
    2023 WL 5207985 (S.D.N.Y. Aug. 14, 2023)...................................................12

*Babcock v. Jackson*,
    12 N.Y.2d 473 (1963)........................................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................7

*Better Holdco, Inc. v. Beeline Loans, Inc.*,
    2021 WL 3173736 (S.D.N.Y. July 26, 2021)...............................................22, 23

*Bristol-Myers Squibb Co. v. Matrix Labs. Ltd.*,
    655 Fed. App'x 9 (2d Cir. 2016) ....................................................7, 14, 15

*Broidy v. Glob. Risk Advisors LLC*,
    2023 WL 6258135, at *13 (S.D.N.Y. Sept. 26, 2023) .......................................19

*Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*,
    295 F.Supp.2d 430 (D. Del. 2003) ........................................................19

*Canosa v. Ziff*,
    2019 WL 498865 (S.D.N.Y. Jan. 28, 2019)..............................................14, 15

*Cotiviti, Inc. v. Deagle*,
    501 F. Supp. 3d 243 (S.D.N.Y. 2020) .....................................................12

*El Omari v. Buchanan*,
　2021 WL 5889341 (S.D.N.Y. Dec. 10, 2021),
　*aff'd*, 2022 WL 4454536 (2d Cir. Sept. 26, 2022) ................................................................... 22

*Fedders Corp. v. Haier Am. Trading, LLC*,
　2002 WL 519733 (S.D.N.Y. Apr. 4, 2002) ....................................................................... 10

*Fin. One Public Co. Ltd. v. Lehman Bros. Special Fin. Inc.*,
　414 F.3d 325 (2d Cir. 2005) ................................................................... 8, 10, 12

*First Advantage Background Servs., Corp. v. Private Eyes, Inc.*,
　569 F.Supp.2d 929 (N.D. Cal. 2008) ....................................................................... 18, 19

*Foisie v. Worcester Polytechnic Inst.*,
　967 F.3d 27 (1st Cir. 2020) ....................................................................... 15

*Friedl v. City of New York*,
　210 F.3d 79 (2d Cir. 2000) ....................................................................... 11

*FTI Consulting, Inc. v. Graves*,
　2007 WL 2192200 (S.D.N.Y. July 31, 2007) ....................................................................... 13

*Genzyme Corp. v. Bishop*,
　463 F. Supp. 2d 946 (W.D. Wis. 2006) ....................................................................... 19

*Hancock v. Cnty. of Rensselaer*,
　882 F.3d 58 (2d Cir. 2018) ....................................................................... 20, 23

*Innovative BioDefense, Inc. v. VSP Techs., Inc.*,
　2013 WL 3389008 (S.D.N.Y. July 3, 2013) ....................................................................... 12

*Integral Dev. Corp. v. Tolat*,
　675 F. App'x 700 (9th Cir. 2017) ....................................................................... 17, 19

*Ipreo Holdings LLC v. Thomson Reuters Corp.*,
　2011 WL 855872 (S.D.N.Y. Mar. 8, 2011) ....................................................................... 20

*Irth Sols., LLC v. Apex Data Sols. & Servs., LLC*,
　2020 WL 13180371 (W.D.N.Y. Apr. 15, 2020) ....................................................................... 21

*James v. Suffolk Cnty. Corr. Facility*,
　2014 WL 4659300 (E.D.N.Y. Sept. 17, 2014) ....................................................................... 11

*Kaufman v. Nest Seekers, LLC*,
　2006 WL 2807177 (S.D.N.Y. Sept. 26, 2006) ....................................................................... 21

*Koch v. Christie's Intern. PLC*,
　699 F.3d 141 (2d Cir. 2012) ....................................................................... 7

*Lapp Insulators LLC v. Gemignani*,
  2011 WL 1198648 (W.D.N.Y. Mar. 9, 2011) ...................................................20, 21

*Lynx Tech. Partners, Inc. v. Pitts Mgmt. Assocs., Inc.*,
  2021 WL 2516111 (E.D.N.Y. June 6, 2021) ..........................................................12

*Manbro Energy Corp. v. Chatterjee Advisors, LLC*,
  2021 WL 2037552 (S.D.N.Y. May 21, 2021) ........................................................12

*Medidata Sol., Inc. v. Veeva Sys., Inc.*,
  2021 WL 467110 (S.D.N.Y. Feb. 9, 2021) .........................................................8, 15

*Meserole v. Sony Corp. of Am., Inc.*,
  2009 WL 1403933 (S.D.N.Y. May 19, 2009) ........................................................15

*Micrel Inc. v. Monolithic Power Sys., Inc.*,
  2005 WL 8165885 (N.D. Cal. Apr. 11, 2005)........................................................19

*Nexans Wires S.A. v. Sark-USA, Inc.*,
  319 F. Supp. 2d 468 (S.D.N.Y. 2004),
  *aff'd*, 166 Fed. App'x 559 (2d Cir. 2006)......................................................20, 23

*Nostrum Pharm., LLC v. Dixit*,
  2014 WL 4370695 (S.D.N.Y. Sept. 2, 2014) .....................................................15, 16

*Nunes v. Cable News Network, Inc.*,
  31 F.4th 135 (2d Cir. 2022) ......................................................................7

*Perkins v. Bronx Lebanon Hosp.*,
  2015 WL 3649330 (S.D.N.Y. June 11, 2015) ........................................................14

*Reis, Inc. v. Spring11 LLC*,
  2016 WL 5390896 (S.D.N.Y. Sept. 26, 2016) ....................................................20, 23

*Sarkissian Mason, Inc. v. Enter. Holdings, Inc.*,
  955 F. Supp. 2d 247 (S.D.N.Y. 2013),
  *aff'd*, 572 F. App'x 19 (2d Cir. 2014) ...........................................................8, 9

*Saunders Ventures, Inc. v. Salem*,
  797 F. App'x 568, 570 (2d Cir. 2019)..............................................................21

*Serv. Emps. Int'l Union v. Roselli*, ...................................................................
  2009 WL 3013501 (N.D. Cal. Sept. 17, 2009) ......................................................17

*Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*,
  118 F.3d 955 (2d Cir. 1997) ....................................................................8, 10

iv

*Think Vill.-Kiwi, LLC v. Adobe Sys., Inc.*,
  2009 WL 902337 (N.D. Cal. Apr. 1, 2009) ................................................................. 18

*ValveTech, Inc. v. Aerojet Rocketdyne, Inc.*,
  2018 WL 4681799 (W.D.N.Y. Sept. 28, 2018) ........................................................... 17

*Van Buren v. United States*,
  539 U.S. ---, 141 S.Ct. 1648 (2021) .......................................................................... 21

*Wade Park Land Holdings, LLC v. Kalikow*,
  2022 WL 2479110 (S.D.N.Y. July 6, 2022),
  *appeal docketed* No. 23-591 (2d Cir. Apr. 7, 2023) ................................................... 14

## STATUTES

California Business and Professions Code for Unfair Business Practices .............................. 6, 16, 18

California Uniform Trade Secrets Act .......................................................................... 1, 6, 17

Computer Fraud and Abuse Act .................................................................................... passim

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 1, 7

## OTHER AUTHORITIES

*Milgrim on Trade Secrets* § 1.01[3][a] ...................................................................... 18

By its counsel, Slarskey LLC, Plaintiff Socialedge, Inc. d/b/a CreatorIQ

("CreatorIQ") submits this memorandum of law in opposition to Traackr, Inc. ("Traackr") and

Ben Staveley's ("Staveley") (together, "Defendants") partial motion to dismiss the Amended

Complaint ("Motion") pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

When Staveley, a former CreatorIQ employee, left the company, he stole trade

secrets—including product intelligence, product demonstrations, customer pricing and

relationship intelligence, and pricing methodologies—and used them for the benefit of his new

employer, Traackr, a direct competitor to CreatorIQ in the influencer marketing industry.

Staveley and Traackr unfairly used CreatorIQ's trade secrets for Traackr's direct benefit and to

CreatorIQ's direct detriment. Staveley's actions not only violate the terms of his confidentiality

agreement with CreatorIQ, but Defendants' use of the trade secrets violate a multitude of trade

secrets, computer fraud, and unfair competition laws.

Anticipating that Defendants would argue for the application of California law,

CreatorIQ asserted, *inter alia*, various common law claims under New York law and, in the

alternative, under California law, and several California-law based statutory claims. In their

Motion, Defendants argue that California law should apply, and that as a result, the California

Uniform Trade Secrets Act ("CUTSA") preempts all statutory and common law claims based on

the same set of operative facts. Defendants also seek the dismissal of CreatorIQ's Computer

Fraud and Abuse Act ("CFAA") claim, arguing that the Amended Complaint fails to sufficiently

plead a "loss," as defined by the statute. For each of the reasons below, the Motion should be

denied and/or, at a bare minimum, various issues deferred until after discovery has taken place.

*First*, New York—not California—law is applicable to CreatorIQ's common law

claims. Under the "interests analysis," New York has the greatest interest in this litigation

because the vast majority of Defendants' misconduct, including Staveley and Traackr's dissemination and use of CreatorIQ's trade secrets, occurred in New York, and the parties have other significant connections to the state, including Staveley's residence and CreatorIQ and Traackr's New York offices. While CreatorIQ and Traackr are headquartered in California, on the whole, this connection pales in comparison to the New York-based conduct central to this dispute.

*Second*, to the extent the Court is unable to determine that New York law is applicable, it should defer ruling on the choice-of-law issue until after discovery. Numerous courts, including this one, have held that choice-of-law issues are often premature for resolution at the motion-to-dismiss stage. At a minimum, that is the case here. Additional facts adduced during the course of discovery are needed for the Court to make a more informed decision.

*Third*, even to the extent California law is deemed applicable, a decision on whether CUTSA preempts CreatorIQ's common law and California-law based statutory claims should be deferred until after a finding that the confidential and proprietary information underlying CreatorIQ's claims is a protectable trade secret. Even though CUTSA typically preempts non-contract claims arising from the same operative facts as a trade secret misappropriation claim, many courts—including the Ninth Circuit and district courts throughout the country—have held CUTSA *does not* prevent a recovery for the misuse of information that ultimately does not qualify as a trade secret. Therefore, to the extent it is ultimately determined that the confidential and proprietary information at issue in this litigation is not a trade secret, CreatorIQ's non-CUTSA claims may proceed.

And *fourth*, CreatorIQ has adequately alleged a "loss" under the CFAA based on its hiring of a third-party forensic expert to investigate and conduct a damage assessment as a

result of Staveley's improper, post-employment use of unauthorized credentials to log into and use a CreatorIQ-owned customer relationship management database. Despite Defendants' claim otherwise, courts in this Circuit have repeatedly held that actual monetary costs associated with a plaintiff's forensic investigation to determine the extent of an unauthorized user's misappropriation of proprietary information, such as those incurred here, are sufficient to qualify as a "loss" under the statute.

## FACTUAL BACKGROUND

### I. Factual Allegations

#### A. The Parties

CreatorIQ is a technology company that specializes in influencer marketing and social media management, providing a comprehensive platform for brands and agencies to locate and manage influencer marketing campaigns and track performance across various social media channels. (*See* Amended Complaint ("Am. Compl."), ECF No. 20, ¶ 15.) CreatorIQ's platform offers tools for identifying and connecting companies with relevant influencers, facilitating collaboration and content creation, and measuring the impact and effectiveness of influencer campaigns. (*Id.*) Traackr is a direct competitor to CreatorIQ, and touts itself as "the system of record for data-driven influencer marketing, providing the intelligence and tools needed to run impactful influencer marketing programs." (*Id.* ¶ 16.)

In approximately January 2020, Staveley was hired by Tribe Dynamics International Ltd. ("Tribe UK"), a marketing company that offered advanced influencer marketing analytics and solutions for lifestyle brands. (Am. Compl. ¶¶ 17-18.) Staveley subsequently moved to the United States and, following CreatorIQ's acquisition of Tribe UK's affiliated entities, Staveley became Senior Vice President, Growth at CreatorIQ. In that role, he had access to CreatorIQ's highly confidential and proprietary product demonstrations, customer

3

relationship management databases ("CRM") (which track customer relationships, contacts, pricing, and contract information), and product strategies. (*Id.* ¶¶ 19-22.)

**B. Staveley Steals and Uses CreatorIQ's Trade Secrets and Confidential Information**

Staveley resigned from CreatorIQ on October 14, 2022 and shortly thereafter, moved to New York City where he began working for Traackr. (Am. Compl. ¶¶ 44-45.) Unbeknownst to CreatorIQ, however, Staveley downloaded copies of CreatorIQ's CRM data, retained CreatorIQ's confidential and proprietary information, and continued to access CreatorIQ's CRM without authorization, all of which he ultimately intended to and did use for his own, and Traackr's, benefit. (*Id.* ¶ 46.)

**i. Staveley Improperly Accessed CreatorIQ-owned CRM Database While Employed by Traackr**

CreatorIQ uses Hubspot (a customizable cloud-based software) as one of its CRM platforms and maintains multiple proprietary CRM databases within Hubspot's software system. (Am. Compl. ¶¶ 47-48.) CreatorIQ's CRM databases, of which Hubspot is a key component, generally contains valuable information regarding customer relationships including the names, contact information, current employers, contract sizes, contract end dates, and sales notes concerning, in total, more than 30,000 individuals across a multitude of customers and targeted customers from around the world. (*Id.* ¶ 51.) CreatorIQ's CRM databases are among its most valuable assets and represent the collective intelligence and years-long effort of scores of CreatorIQ employees to identify, acquire, and catalog this information to provide CreatorIQ with a distinct competitive advantage. (*Id.*) Only CreatorIQ's current employees and contractors with authorized login credentials, each of whom are subject to strict confidentiality obligations, are permitted access to CreatorIQ's CRM databases. (*Id.* ¶¶ 49-50.)

While employed by CreatorIQ, Staveley was provided administrator credentials to CreatorIQ's Hubspot account which was associated with his work email address, "ben.staveley@creatoriq.com" ("CreatorIQ Administrator Credentials"). (Am. Compl. ¶ 52.) In or about January 2021, Staveley used his CreatorIQ Administrator Credentials to surreptitiously create a separate, unauthorized login ID connected to a personal email account identified as "ben@seedaconsulting.com" ("Unauthorized Credentials"). (*Id.* ¶ 54.) Based on publicly available records, SeedA Consulting Ltd. is a now-dissolved UK-based corporate entity which was created in or about January 2021 by Staveley. (*Id.* ¶ 55.)

Between October 2022 and August 2023, when he was no longer a CreatorIQ employee, Staveley used the Unauthorized Credentials to log into and access a CreatorIQ-owned Hubspot account at least twelve (12) times, all of which occurred *after* Staveley left CreatorIQ's employ, including—most recently—the week after this litigation was initiated. (Am. Compl. ¶¶ 56-57.) According to the IP addresses associated with each of these twelve log-ins, all but one log-in occurred from access points in New York. (*Id.* ¶ 58.) CreatorIQ, of course, did not authorize or otherwise permit Staveley to log into and/or access any of CreatorIQ's Hubspot accounts *after* he was no longer employed by CreatorIQ. (*Id.* ¶ 59.) As a result of Staveley's unauthorized and unpermitted log-ins and access into a CreatorIQ-owned Hubspot account, CreatorIQ was forced to hire a forensic expert to further investigate and conduct a damage assessment. (*Id.* ¶ 60.)

### ii. Defendants Use CreatorIQ's Trade Secrets and Proprietary Information for Their Commercial Benefit

In or about May 2023, a current Traackr employee ("Jane Doe"), who works directly with Staveley at Traackr, disclosed to a former CreatorIQ employee ("John Doe"), that Staveley had retained CreatorIQ's confidential and proprietary information which he

subsequently shared with others at Traackr in connection with his new role at the company. (Am. Compl. ¶ 61.) More specifically, Jane Doe stated emphatically that Staveley "stole" CreatorIQ's confidential and proprietary information, including product demonstrations, customer lists, and contacts, and then furnished this information to other Traackr employees as part of a presentation Staveley provided at a "town hall" meeting conducted, upon information and belief, while in New York City. (*Id.* ¶¶ 62-63.)

Staveley's conduct was so brazen, Jane Doe bluntly described him as "manipulative" and questioned how Traackr could have hired someone with "zero morals." (Am. Compl. ¶ 64.) Jane Doe explained further that no Traackr employees objected to Staveley's retention or disclosure of CreatorIQ's confidential and proprietary information at the town hall meeting and that, quite the opposite, Traackr specifically used the information – including a production demonstration – to ascertain CreatorIQ's perceived weaknesses in the market and to gain competitive intelligence with respect to one of CreatorIQ's customers—one of the leading social media platforms in the world—for potential acquisition. (*Id.* ¶ 65.)

## II.  CreatorIQ's Causes of Action and Defendants' Motion

CreatorIQ asserts eleven (11) causes of action against Defendants, including: (1) violation of the federal Defend Trade Secrets Act; (2) violation of CUTSA; (3) common law claims for misappropriation of trade secrets, breach of fiduciary duty, tortious interference with contract, unfair competition, unjust enrichment, and conversion (together, the "common law claims"); (4) breach of contract; (5) violation of California Business and Professions Code for Unfair Business Practices ("UCL"); and (6) violation of the CFAA. (Am. Compl. ¶¶ 74-185.) Notably, CreatorIQ's common law claims are asserted pursuant to New York and California law. (*Id.*) In their Motion, Defendants take issue with eight (8) of those causes of action, seeking dismissal of CreatorIQ's common law, UCL, and CFAA claims (Counts III, IV, and VI-XI).

As explained in the Amended Complaint, CreatorIQ submits that, with the exception of its breach-of-contract claim (Count V), which is not at issue on this Motion, New York law is applicable to its common law claims against Defendants. (Am. Compl. at 20 n.3.) However, in an abundance of caution, and in anticipation of Defendants' argument that California law is applicable to some or all of CreatorIQ's causes of action, CreatorIQ asserted, in the alternative, two causes of action under California law (Counts II and VII) and its common law causes of action under both New York and California law (Counts III-IV, VI, and VIII-X).

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is only properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

For the purpose of resolving a motion to dismiss, the Court must assume all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff. *See Koch v. Christie's Intern. PLC*, 699 F.3d 141, 145 (2d Cir. 2012). Similarly, with respect to choice-of-law determinations in particular, the Court must resolve any "ambiguities in favor of the non-moving party; the ambiguity is not a reason to dismiss the case." *Nunes v. Cable News Network, Inc.*, 31 F.4th 135, 151 (2d Cir. 2022) (Menashi, J.) (dissent) (citing *Bristol-Myers Squibb Co. v. Matrix Labs. Ltd.*, 655 Fed. App'x 9, 13 (2d Cir. 2016)).

## ARGUMENT

### I. New York Law Applies to CreatorIQ's Non-Contractual, State Law Claims

The threshold choice-of-law inquiry is whether an "actual conflict" exists. *See AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 135 n.11 (2d Cir. 2018). "An actual conflict arises where the law of each jurisdiction 'provides different substantive rules,' and the differences are 'relevant' and have a 'significant possible effect on the outcome of the trial[.]'" *Medidata Sol., Inc. v. Veeva Sys., Inc.*, 2021 WL 467110, at \*12 (S.D.N.Y. Feb. 9, 2021) (quoting *Fin. One Public Co. Ltd. v. Lehman Bros. Special Fin. Inc.*, 414 F.3d 325, 331-32 (2d Cir. 2005)). Here, an "actual conflict" exists between New York and California law because non-contract claims arising from the same operative facts as a trade secret misappropriation claim are not preempted under New York law, while in certain circumstances (*see* Section III, *infra*), such claims are preempted under California law. *See Medidata Sol.*, at \*12.

When a conflict exists, as here, "New York courts apply an 'interest analysis,' under which the law of the jurisdiction having the greatest interest in the litigation is applied." *Sarkissian Mason, Inc. v. Enter. Holdings, Inc.*, 955 F. Supp. 2d 247, 254 (S.D.N.Y. 2013), *aff'd*, 572 F. App'x 19 (2d Cir. 2014) (citing *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992)). The question, therefore, is which jurisdiction "has the greatest concern with the specific issue raised in the litigation" by virtue of its "relationship or contact with the occurrence or the parties." *Babcock v. Jackson*, 12 N.Y.2d 473, 481 (1963). In trade secret cases, the "Second Circuit and its district courts have often used the locus of the misappropriation to determine…the state with the greatest interest." *Sarkissian*, 955 F. Supp. 2d at 254 (citing, *inter alia*, *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 968 (2d Cir. 1997)).

**A.  New York Has the Greatest Interest in this Litigation**

New York has the greatest interest in this litigation. Staveley's misappropriation of CreatorIQ's proprietary and confidential information (*i.e.*, the substantive acts which led to this lawsuit) occurred almost entirely within New York, and both companies have significant ties to the state. Staveley improperly accessed a CreatorIQ-owned Hubspot account eleven times while located in New York (including once after this litigation was initiated) and shared CreatorIQ's proprietary and confidential information—including, at a minimum, a product demonstration—with his colleagues at Traackr during a "town hall" meeting that occurred in New York. (Am. Compl. ¶¶ 56-58, 62-63.) Defendants' attempt to minimize this conduct by arguing these allegations are merely "sprinkl[ed]" in to create a connection to New York (Defs' Br. at 6) is misplaced. Staveley's New York-based sharing of CreatorIQ's competitive product and customer intelligence with a direct competitor is the precise misappropriation underlying CreatorIQ's claims in this lawsuit. *See Sarkissian*, 955 F. Supp. 2d at 254. While discovery may reveal additional unlawful conduct, the conduct alleged in the Amended Complaint clearly places the wrongdoing in New York.

Beyond this, CreatorIQ and Traackr are both registered to do business in New York, both companies maintain offices in New York, and Staveley resides in New York City and works out of Traackr's New York City office. (Am. Compl. ¶¶ 7-9.) The only known and significant connections this case has to California are that CreatorIQ and Traackr are both headquartered in the state, and Staveley previously lived there while working for CreatorIQ. Even so, neither entity is incorporated in the state (both are incorporated in Delaware (*id.* ¶¶ 7, 8)), and the core wrongdoing alleged—*i.e.*, Staveley's *use and disclosure* of CreatorIQ's confidential and proprietary information for the benefit of himself and Traackr—still *occurred in New York* (*id.* ¶¶ 56-58, 62-63). Taken together, and "because of its relationship [and] contact

with the occurrence [and] the parties," New York—*not* California—"has the greatest concern with the specific issue raised in the litigation." *Fin. One Pub. Co.*, 414 F.3d at 337 (citation omitted); *see, e.g., Softel*, 118 F.3d at 967-68 (finding New York had "greatest interest in the litigation" and applying New York law to trade secrets claims where both parties maintained New York offices and "the misappropriation, if any, apparently took place in New York, at [the defendant's] offices"); *Fedders Corp. v. Haier Am. Trading, LLC*, 2002 WL 519733, at *4 (S.D.N.Y. Apr. 4, 2002) (finding Illinois had "the greatest interest in the litigation . . . because the actual misappropriation [of trade secrets], if any, took place in Illinois, and both [the individual defendant] and [plaintiff-corporate entity] have ties to Illinois").

Defendants wildly distort CreatorIQ's allegations to argue otherwise. CreatorIQ has not, in fact, alleged that the "records at issue" in this litigation were "export[ed] . . . in the three months just *prior* to leaving CreatorIQ for New York." (Defs' Br. at 6 (citing Am. Compl. ¶ 53) (internal quotation marks omitted).) The records referenced in this portion of the Amended Complaint are not the confidential and proprietary information which currently forms the basis of CreatorIQ's trade secret claims. (*See* Am. Compl. ¶ 53; *compare id.* ¶¶ 54-59, 62, 65.) Indeed, CreatorIQ specifically noted that, with respect to the exporting of these records, "there were, perhaps, innocuous justifications for Staveley's conduct given his position with CreatorIQ[.]" (*Id.* ¶ 53.) Just as important, CreatorIQ does not allege—because it does not yet know—where specifically Staveley was located when these records were exported. (*Id.*) Defendants' suggestion otherwise is pure speculation. Similarly, the measures CreatorIQ takes to protect its confidential and proprietary information apply uniformly across the company, including to its New York office (*see, e.g., id.* at ¶¶ 38 (requiring employee badges "to enter corporate *offices*") (emphasis added), 40 (discussing technology-based protective measures and policies applicable

to "*all* of [CreatorIQ's] employees") (emphasis added)), and CreatorIQ does not allege that such measures are limited to any one state. (*Id.* ¶¶ 37-42.)

## B. Staveley's Confidentiality Agreement is Immaterial to the Court's Determination of the Law Applicable to CreatorIQ's Extra-contractual Claims

Defendants' cursory reference to a choice-of-law provision in Staveley's Confidentiality Agreement does little to further their argument that California law should apply. (Defs' Br. at 7.) As a threshold matter, Defendants did not attach a copy of the Confidentiality Agreement to their motion papers (even if they were permitted to do so), but instead merely include purported contents thereof in their moving brief, and therefore, the precise terms of the choice-of-law provision are not properly before this Court for consideration on a motion to dismiss. *See Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000) ("[A] district court errs when it . . . relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss.") (internal quotation marks and citations omitted); *see, e.g.*, *James v. Suffolk Cnty. Corr. Facility*, 2014 WL 4659300, at *1 (E.D.N.Y. Sept. 17, 2014) (denying defendants' motion to dismiss because they "submitted no documents to support th[e relevant factual] assertion").

Notwithstanding this procedural flaw in Defendants' argument, Defendants do not even attempt to explain why the choice-of-law provision is relevant to the Court's analysis— because it is not. Staveley's Confidentiality Agreement does not govern each and every theoretical claim by and between Staveley and CreatorIQ, as Defendants suggest. (Defs' Br. at 7.) The California choice-of-law provision referenced is *narrowly tailored* to apply to *contract-based* claims. (*See id.* (citing choice-of-law provision which governs "[t]he validity, construction and performance of *this Agreement*," and all "acts and transactions" and "rights and obligations" pursuant "*hereto*") (emphasis added).) Such clauses do not encompass extra-contractual

11

common law tort-based claims. *See Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d

325, 334 (2d Cir. 2005) (noting the "reluctance on the part of New York courts to construe

contractual choice-of-law clauses broadly to encompass extra-contractual causes of action");

*Innovative BioDefense, Inc. v. VSP Techs., Inc.*, 2013 WL 3389008, at *4 (S.D.N.Y. July 3,

2013) ("New York courts have consistently held that language that the 'agreement itself' is to be

governed by a particular law is too narrow to cover noncontractual claims[.]"). Therefore, the

application of California law is limited solely to claims that *arise from* the Confidentiality

Agreement, and nothing more. *See Lynx Tech. Partners, Inc. v. Pitts Mgmt. Assocs., Inc.*, 2021

WL 2516111, at *3 (E.D.N.Y. June 6, 2021) ("Where a choice-of-law provision states simply

that '[t]his Agreement will be governed by' a state's laws, it governs only contractual claims,

and the court must undertake a choice-of-law analysis to determine which state's law governs

other claims.") (quoting *Fin. One Pub.*, 414 F.3d at 335); *see, e.g., Cotiviti, Inc. v. Deagle*, 501

F. Supp. 3d 243, 256 (S.D.N.Y. 2020) (in a trade secret matter, explaining that even if

enforceable, "the contractual choice-of-law clause does not reach tort claims").

   Moreover, even if the Confidentiality Agreement did extend more broadly to

Staveley's relationship with CreatorIQ (it does not), that would have no impact on the claims

asserted against Traackr, to which New York law can (and should) nonetheless apply. *See Ashton

al. v. Al Qaeda Islamic Army (In re Terrorist Attacks on Sept. 11, 2001)*, 2023 WL 5207985, at

*3 (S.D.N.Y. Aug. 14, 2023) ("New York law requires courts to analyze choice-of-law on a

*party-versus-party or tort-by-tort basis*, not by looking at the case as a whole.") (emphasis

added). Defendants make absolutely no mention of this dichotomy, and simply proceed as if the

Confidentiality Agreement's choice-of-law provision could universally apply to claims against

Traackr, as well. It does not. *See, e.g., Manbro Energy Corp. v. Chatterjee Advisors, LLC*, 2021

WL 2037552, at *3 (S.D.N.Y. May 21, 2021) (notwithstanding Delaware choice-of-law provision in contract, engaging in "interest analysis" and applying New York law to tortious interference claims); *FTI Consulting, Inc. v. Graves*, 2007 WL 2192200, at *10 (S.D.N.Y. July 31, 2007) (declining to apply choice-of-law provision contained in former employee's contract to tortious interference claim against new employer); *Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881, 900 (Cal. Ct. App. 1998) (holding that, notwithstanding Maryland choice-of-law provision in former employee's contract, California law applied to tortious interference claim against new employer).

### C. CreatorIQ's Assertion of Claims Under New York and California Law is Justified, if Not Required, Given the Dispute Regarding the Applicable Law

CreatorIQ chose to pursue claims under both New York and California to protect its rights and assert the appropriate claims needed to obtain the redress sought, not to "tr[y] to salvage its claims[.]" (Defs' Br. at 6.) CreatorIQ was aware and (correctly) predicted that Defendants would make the precise argument they set forth now: that California law was applicable to its common law claims. Therefore, recognizing that the Court's ultimate finding on the choice-of-law issue could alter the landscape of the proper causes of action, CreatorIQ asserted all potentially necessary claims in a single pleading.

There is nothing unusual or improper about proceeding in this fashion, nor is it indicative, as Defendants suggest (Defs' Br. at 7), of CreatorIQ's belief as to which state's law applies to its claims. Rather, CreatorIQ reasonably (and, again, accurately) anticipated Defendants' argument, and sought to avoid any prejudice as a result. Indeed, at least one District Court in New York recently held that plaintiffs should have asserted common law claims under two different state's laws in an amended complaint once being put on notice that one state's law may apply over another, and that their failure to do so warranted the denial of leave to amend to

add new state law claims after a choice-of-law determination was made. *See Wade Park Land Holdings, LLC v. Kalikow*, 2022 WL 2479110, at *4 (S.D.N.Y. July 6, 2022), *appeal docketed* No. 23-591 (2d Cir. Apr. 7, 2023). Relatedly, this Court's Individual Rules and Practices advise that CreatorIQ would likely only have one opportunity to amend its original complaint following Defendants' filing of its initial motion to dismiss. (*See* Individual Rules and Practices, Rule 3(B).) In combination, CreatorIQ took care to assert all potentially applicable causes of action, depending on which state's law is deemed applicable. CreatorIQ's pleading is an act of prudence, and well in alignment with permissible pleading practices. *See Perkins v. Bronx Lebanon Hosp.*, 2015 WL 3649330, at *6 (S.D.N.Y. June 11, 2015) (Engelmayer, J.) (explaining that Fed. R. Civ. P. 8(d)(2)-(3) "permit[] pleading inconsistent theories in the alternative").

\*       \*       \*

In sum, CreatorIQ has alleged that the vast majority of the Defendants' misappropriation of its confidential and proprietary information occurred in New York, and all three parties have significant connections to the state. These facts far outweigh the relatively insignificant ties this matter has to California. Therefore, New York has the greatest interest in this litigation and New York law should apply to CreatorIQ's common law claims.

## II.  If the Court Cannot Conclude that New York Law Applies, it Should Deny Defendants' Motion and Defer its Choice-Of-Law Determination Until After Discovery

Although CreatorIQ respectfully submits that it is sufficiently clear that New York law applies to its non-contractual common law claims, if the Court disagrees, it should defer an affirmative finding that California law applies until after the close of discovery.

As this Court recently explained, "'choice-of-law determinations are fact-intensive inquiries that would be premature to resolve at the motion-to-dismiss stage.'" *Canosa v. Ziff,* 2019 WL 498865, at *7 (S.D.N.Y. Jan. 28, 2019) (Engelmayer, J.) (quoting *Bristol-*

14

*Myers*, 655 Fed. App'x at 13 (collecting cases); *see also Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 42-43 (1st Cir. 2020) (where "the complaint itself leaves unanswered questions about critical aspects of the pertinent facts," a court "is well-advised to refrain from making an immediate choice-of-law determination"). New York's choice of law principles require a context-specific and detailed analysis that will likely be informed by additional facts adduced in discovery. In fact, even in *Medidata*—the case upon which Defendants primarily rely with respect to their choice-of-law argument (Defs' Br. at 5-6)—was decided at the summary judgment stage, *not* on a motion to dismiss. *See Medidata Sol.*, 2021 WL 467110, at *12.

CreatorIQ has already alleged that the vast majority of Defendants' misconduct occurred in New York, both CreatorIQ and Traackr maintain offices in New York, and Staveley resides and works for Traackr in New York. Discovery will allow the parties to present additional facts germane to the choice-of-law issue and allow the Court to make a more informed decision at a later stage of the litigation. Proceeding in this fashion is likewise consistent with rulings in similar cases. *See*, *e.g.*, *Bristol-Myers*, 655 F. App'x at 13 (explaining that because the court could not "determine at the motion-to-dismiss stage which law indeed governs . . . [,] the district court improperly dismissed the [complaint] for failure to state a claim"); *Canosa,* 2019 WL 498865, at *7 (deferring choice-of-law ruling until after discovery); *Nostrum Pharm., LLC v. Dixit*, 2014 WL 4370695, at *10 (S.D.N.Y. Sept. 2, 2014) (denying motion to dismiss because, "in the case's current posture, the record is too sparse for the Court to decide whether the trade-secrets laws of New Jersey . . . Missouri . . . or New York . . . should apply"); *Meserole v. Sony Corp. of Am., Inc.*, 2009 WL 1403933, at *5 n.6 (S.D.N.Y. May 19, 2009) ("[A]t this early [motion-to-dismiss] stage of the litigation, . . . a detailed choice of law analysis would be premature.").

Despite Defendants' claim otherwise (Defs' Br. at 7), allowing CreatorIQ to maintain all of its claims through discovery will not "impose an expense" on Defendants beyond the ordinary costs typically involved in the defense of this litigation. Defendants, of course, make no effort to explain how CreatorIQ's assertion of several additional California-law based claims would alter discovery in any material manner or require a greater financial expenditure on their part to defend. (*Id.*) Nor could they, as the underlying facts remain the same. CreatorIQ simply seeks to protect its rights (*see* Section I(C), *supra*).[1]

Accordingly, to the extent the Court is unable to determine at this juncture that New York law applies to CreatorIQ's non-contractual common law claims, it should defer the choice-of-law issue until after the close of discovery.

### III. Even if the Court Determines that California Law Applies, the Court Should Defer Any Finding that CUTSA Preempts CreatorIQ's State and Common Law Claims

Defendants argue that CUTSA preempts CreatorIQ's claims for common law misappropriation of trade secrets, breach of fiduciary duty, tortious interference with contract, unfair competition, unjust enrichment, and conversion, and violation of the UCL (Counts III-IV, VI-X). (Defs' Br. at 8-12.) As discussed above, however, New York law—not California law— governs CreatorIQ's common law claims. *See* Section I, *supra*. Because California law does not apply to such claims, it also cannot preempt them.[2] In any event, should the Court determine at this juncture that California law is applicable, the Court still should not dismiss CreatorIQ's state

---

[1] In fact, to prove this point, CreatorIQ is willing to withdraw its California law-based causes of action if the parties stipulate that New York law applies to all of CreatorIQ's causes of action, except for its breach-of-contract claim.

[2] The same holds true if the Court chooses to defer its ruling on the choice-of-law issue until a later stage of the litigation (*see* Section II, *supra*). *See, e.g., Nostrum*, 2015 WL 2208167, at *7 (denying motion to dismiss state law claims as preempted by Missouri Uniform Trade Secrets Act where court declined to resolve choice-of-law question as premature).

and common law claims until after a determination has been made as to whether the confidential

and proprietary information identified by CreatorIQ in the Amended Complaint is deemed a

trade secret.

           CreatorIQ acknowledges that, generally speaking, under California law, CUTSA

preempts non-contract claims that are "based on the same nucleus of facts as trade secret

misappropriation."[3] *ValveTech, Inc. v. Aerojet Rocketdyne, Inc.*, 2018 WL 4681799, at *7

(W.D.N.Y. Sept. 28, 2018). But the Ninth Circuit and some California district courts have

declined to dismiss non-CUTSA claims on the basis that a litigant may use other state and

common law tort theories to recover for the misuse of information that ultimately does not

qualify as a trade secret. *See*, *e.g.*, *Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 704 (9th Cir.

2017) ("CUTSA does preempt some claims, but it does not affect . . . civil remedies that are not

based upon misappropriation of a trade secret.") (internal quotation marks omitted); *Amron Int'l*

*Diving Supply, Inc. v. Hydrolinx Diving Commc'n, Inc.*, 2011 WL 5025178, at *10 (S.D. Cal.

Oct. 21, 2011) ("Defendants' motion to dismiss based on preemption cannot be addressed until it

is determined whether the allegedly misappropriated information constitutes a trade secret.");

*Serv. Emps. Int'l Union v. Roselli*, 2009 WL 3013501, at *7 (N.D. Cal. Sept. 17, 2009) ("This

order need not rule on whether the CUTSA super[s]edes common law claims for conversion of

trade secrets because defendants have failed to prove that the challenged property constitutes

---

[3]       Further buttressing CreatorIQ's earlier point that best practices counseled in favor of its assertion of all conceivably applicable causes of action, whether under California or New York law (*see* Section I(C)), at least one California court has previously held that CUTSA can preempt common law claims even if a plaintiff has chosen not to plead a violation of CUTSA. *See Agile Sourcing Partners, Inc. v. Dempsey*, 2021 WL 4860693, at *8 (C.D. Cal. July 15, 2021). Thus, if CreatorIQ had not asserted a CUTSA claim, and the Court ultimately concludes that California law is applicable to its claims, theoretically, CreatorIQ could be foreclosed from amending its complaint to add a CUTSA claim, thus harming its litigation position.

'trade secrets.'"). In other words, to the extent the confidential and proprietary information Defendants are alleged to have improperly retained, disclosed, and/or misappropriated is proved to be a trade secret, then—and *only then*—would the common law and UCL claims be preempted. The common law and UCL claims could proceed, however, in the event "the confidential information at the foundation of the claim is not a trade secret, as that term is defined in CUTSA." *First Advantage Background Servs., Corp. v. Private Eyes, Inc.*, 569 F.Supp.2d 929, 942 (N.D. Cal. 2008).

While, arguably, this has not been the majority method, it "provides a reasonable way to proceed," particularly at this early stage of the litigation. *Think Vill.-Kiwi, LLC v. Adobe Sys., Inc.*, 2009 WL 902337, at *2 (N.D. Cal. Apr. 1, 2009) (allowing the plaintiffs to amend their complaint to add, *inter alia*, common law misappropriation claims which "will not survive if plaintiff successfully argues that the information in question is a trade secret"). This is particularly true where, as here, Defendants have already questioned CreatorIQ's characterization of the misappropriated confidential and proprietary information as protectable trade secrets in conversations between counsel, thus previewing an argument Defendants appear primed to make later in this litigation. *See* 1 *Milgrim on Trade Secrets* § 1.01[3][a], at 1-68.14 ("It would be a pity if courts apply the preemption statute provisions in such a way as to overlook the fact that our legal system encourages pleading in the alternative. One might believe that certain information is a trade secret and so plead it. However, even if it is not a trade secret, traditional tort theories prohibit its use in a disloyal or unfair fashion in limited and well defined circumstances[.]").

In light of the above, CreatorIQ respectfully submits that the best approach—and the one taken not only by the Ninth Circuit and numerous courts in California, but other courts

throughout the country (include at least one in New York) when confronted with this same

issue—is to defer the preemption analysis until *after* a determination has been made as to

whether all of the subject confidential and proprietary information is deemed a trade secret

within the meaning of CUTSA. *See*, *e.g.*, *Integral Dev.*, 675 F. App'x at 704 (vacating district

court and finding CUTSA did not preempt breach of fiduciary duty claim based on the disclosure

of non-trade secret material); *First Advantage*, 569 F.Supp.2d at 942 (common law claim based

on disclosure of confidential information could proceed unless and until the status of the

information as a trade secret was established); *Micrel Inc. v. Monolithic Power Sys., Inc.*, 2005

WL 8165885, at *2-3 (N.D. Cal. Apr. 11, 2005) (explaining that "at th[e motion to dismiss]

stage, the status of the information [as a trade secret] on which [the plaintiff] bases its claims is

undecided," and therefore, "the Court is not inclined to determine as a matter of law that the

common law misappropriation . . . claims are preempted" under CUTSA); *see also Broidy v.*

*Glob. Risk Advisors LLC*, 2023 WL 6258135, at *13 (S.D.N.Y. Sept. 26, 2023); *Genzyme Corp.*

*v. Bishop*, 463 F. Supp. 2d 946, 949 (W.D. Wis. 2006); *Callaway Golf Co. v. Dunlop Slazenger*

*Group Americas, Inc.*, 295 F.Supp.2d 430, 437 (D. Del. 2003).

### IV. CreatorIQ Has Sufficiently Alleged a "Loss" Under the CFAA

Defendants' sole argument for the dismissal of CreatorIQ's CFAA claim is that it

has not alleged a loss cognizable under the CFAA. (Defs' Br. at 12-13.) Not so.

As relevant here, a civil action for a violation of the CFAA may be brought only

if the misconduct involves "loss to 1 or more persons during any 1-year period . . . aggregating at

least $5,000 in value." 18 U.S.C. §§ 1030(c)(4)(A)(i)(I), (g). A "loss" refers to "any reasonable

cost to any victim, including the cost of responding to an offense, conducting a damage

assessment, and restoring the data, program, system, or information to its condition prior to the

offense, and any revenue lost, cost incurred, or other consequential damages incurred because of

interruption of service." 18 U.S.C. § 1030(e)(11). In addition, "[d]amages for a violation

involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic

damages." 18 U.S.C. § 1030(g); *see also Hancock v. Cnty. of Rensselaer*, 882 F.3d 58, 63 (2d

Cir. 2018).

        District courts in the Second Circuit have held that a plaintiff "can satisfy the

CFAA § 1030(g) 'damage or loss' requirement by pleading a loss stemming from a damage

assessment and/or remedial measures, even without pleading actual damage." *Ipreo Holdings*

*LLC v. Thomson Reuters Corp.*, 2011 WL 855872, at *7 (S.D.N.Y. Mar. 8, 2011); *see also Reis,*

*Inc. v. Spring11 LLC*, 2016 WL 5390896, at *8 (S.D.N.Y. Sept. 26, 2016) ("The weight of

caselaw [in this Circuit] holds that a Plaintiff can satisfy the CFAA § 1030(g) 'damage or loss'

requirement by pleading a loss stemming from a damage assessment and/or remedial measures,

even without pleading actual damage.") (emphasis added) (citations omitted). Such "damage

assessments" include forensic investigations to determine the extent of an unauthorized user's

misappropriation of proprietary information. *See Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F.

Supp. 2d 468, 475 (S.D.N.Y. 2004), *aff'd*, 166 Fed. App'x 559, 562-63 (2d Cir. 2006) ("The

meaning of 'loss,' . . . has consistently meant a *cost of investigating* or remedying damage to a

computer[.]") (emphasis added); *see, e.g., Lapp Insulators LLC v. Gemignani*, 2011 WL

1198648, at *8 (W.D.N.Y. Mar. 9, 2011).

        In *Lapp*, the plaintiff alleged that the defendant "intentionally accessed" the

plaintiff's "confidential and proprietary information," and that, in response, it "conducted a

forensic analysis of that computer," which "revealed that [the defendant] had accessed

confidential and proprietary information stored on the laptop computer on multiple occasions[.]"

*Lapp Insulators*, 2011 WL 1198648, at *8. The court held that the costs incurred as a result of

that forensic investigation were sufficient to adequately plead a "loss" under the CFAA. *Id.*; *see also Kaufman v. Nest Seekers, LLC*, 2006 WL 2807177, at *8 (S.D.N.Y. Sept. 26, 2006) ("costs involved in investigating the damage to [a] computer system may constitute . . . loss," even if no actual damage is discovered).

Likewise, CreatorIQ alleges Defendants' conduct necessitated an investigation, which included an assessment of not only who accessed CreatorIQ's Hubspot account without authorization, but what was viewed or otherwise misappropriated, and how that unauthorized access was accomplished. (Am. Compl. ¶¶ 54-60, 183-184.) This investigation, and the cost thereof, included the hiring of a third-party forensic firm which performed a forensic investigation and damage assessment and, thus far, confirmed that Staveley improperly accessed a CreatorIQ-owned Hubspot CRM on more than ten occasions and performed testing to ascertain the methods by which it was done. (*Id.* ¶ 60, 183-184.) The Amended Complaint, therefore, states a valid claim under the CFAA. *See Lapp*, 2011 WL 1198648, at *8. Indeed, another district court in New York recently held that nearly verbatim allegations were sufficient to withstand a motion to dismiss in response to the exact same argument Defendants make here. *See Irth Sols., LLC v. Apex Data Sols. & Servs., LLC*, 2020 WL 13180371, at *5 (W.D.N.Y. Apr. 15, 2020) (explaining that the plaintiff's allegation that it "retain[ed] a forensic expert to further investigate the scope and extent of the unauthorized access and determine the harm inflicted" was sufficient under the CFAA); *see also Saunders Ventures, Inc. v. Salem*, 797 F. App'x 568, 570, 572 (2d Cir. 2019) (cost of "investigat[ing] . . . unauthorized access to [a database]" qualifies as a "cost[ ] of 'conducting a damage assessment'" under the CFAA).

Defendants' reliance on *Van Buren v. United States*, 539 U.S. ---, 141 S.Ct. 1648 (2021), and *Better Holdco, Inc. v. Beeline Loans, Inc.*, 2021 WL 3173736 (S.D.N.Y. July 26,

2021) (Defs' Br. at 12-13), is misplaced. With respect to *Van Buren*, first, it involved a criminal prosecution, *not* a civil litigation, where the stakes involved encouraged a higher degree of lenity, even if not explicitly so. *See Van Buren*, 141 S.Ct. at 1661 (explaining that if the "clause [at issue] criminalizes every violation of a computer-use policy, then millions of otherwise law-abiding citizens are criminals" and that "the Government's interpretation of the statute would attach criminal penalties to a breathtaking amount of commonplace computer activity"). Second, the portion of *Van Buren* Defendants rely upon is dicta, and therefore, not even materially relevant to the Supreme Court's holding. *See id.* at 1653-54 (explaining that the case turned on the applicability and interpretation of the phrase "exceeds authorized access" within the context of 18 U.S.C. § 1030(e)(6), not "damage" or "loss" within the context of 18 U.S.C. § 1030(g)). Third, and most importantly, *Van Buren* did nothing to alter the existing caselaw in this district. As one court in this district recently explained, "[p]rior to *Van Buren*, courts in this District *similarly* interpreted the CFAA to require 'loss' related to damage or impairment of the target computer itself" such that "when determining whether certain costs fall under 'loss,' the focus is on the connection between the plaintiff's response and damage to or impairment of the protected computer." *El Omari v. Buchanan*, 2021 WL 5889341, at *14 (S.D.N.Y. Dec. 10, 2021), *aff'd*, 2022 WL 4454536 (2d Cir. Sept. 26, 2022) (some internal quotation marks omitted) (emphasis added). In other words, even *after* the Supreme Court's observation in *Van Buren*, the state of the law in this district remains unchanged. And to be sure, the Amended Complaint does, in fact, focus "on the connection between the *plaintiff's response* and 'damage to or impairment of'" CreatorIQ's computers. *El Omari*, 2021 WL 5889341, at *14; *compare* (Am. Compl. ¶ 60 (alleging that the hiring of a third-party forensic firm to investigate and conduct a damage

assessment in response to Staveley's unauthorized and unpermitted log-ins to a CreatorIQ Hubspot account).)

       *Better Holdco* is even less germane. As an initial matter, it is of little precedential value compared to the wealth of case law in this Circuit which has consistently held that the cost of investigating and/or assessing the potential damage caused by an individual's unauthorized access falls within the definition of "loss" under the CFAA. *See Nexans Wires*, 319 F. Supp. 2d at 475; *see also Reis*, 2016 WL 5390896, at *8 (collecting cases). More significantly, the factual circumstances in *Better Holdco* are plainly distinguishable from those here. In *Better Holdco*, the plaintiff alleged that it sustained a purported "loss" in the form of its in-house counsel and business personnel's expenditure of "substantial time and resources to investigate and address the [computer] intrusion," which the Court found insufficient to establish a "loss." *Better Holdco*, 2021 WL 3173736, at *4 ("[T]hose resources are not a covered cost of responding to an offense[.]") (internal quotation marks omitted); *compare Hancock*, 882 F.3d at 63 (noting that the damages incurred as a result of conduct in violation of 18 U.S.C. § 1030(c)(4)(A)(i)(I) is "limit[ed] . . . to *economic damages*") (emphasis added). By contrast, here, CreatorIQ does not allege some amorphous amalgamation of "losses" based on the expenditure of CreatorIQ's man-hours, but rather, that it hired a third-party forensic expert, the actual cost of which exceeds $5,000, to investigate Staveley's improper actions and conduct a damage assessment. (Am. Compl. ¶¶ 60, 183-184.) And finally, regardless of Defendants' inaccurate interpretation of *Better Holdco* (Defs' Br. at 13 ("So too here, CreatorIQ does not allege any actual damage to its systems.")), it is well-established that *actual damages* are not required. *See Reis*, 2016 WL 5390896, at *8 (explaining that a plaintiff can properly plead a CFAA claim, "even without pleading actual damage," and collecting cases).

Accordingly, CreatorIQ has sufficiently pled a cognizable harm under the CFAA, and Defendants' motion to dismiss this claim should be denied.

## <u>CONCLUSION</u>

In light of the above, Defendants' motion to dismiss the Amended Complaint should be denied. In the alternative, the Court should defer ruling on the choice-of-law and/or preemption issues until after the close of discovery.

Dated: New York, New York
December 12, 2023

SLARSKEY LLC

By: _____

Renee Bea
Richard Weingarten
767 Third Avenue, 14th Floor
New York, NY 10017
(212) 658-0661
*Counsel for Plaintiff*
*Socialedge, Inc. d/b/a CreatorIQ*

24