**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr><td>

SOCIALEDGE, INC. d/b/a CREATORIQ,

                        Plaintiff,

      v.

TRAACKR, INC. AND BEN STAVELEY,

                       Defendants.

</td><td>

Case No.  1:23-cv-06860-PAE

**DEFENDANTS TRAACKR, INC.'S AND BEN STAVELEY'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT**

</td></tr>
</table>

## ARGUMENT

I. **To Expedite Resolution of This Case, Defendants Accept Plaintiff's Proposal to Drop California Law Claims and Stipulate to the Application of New York Law.**

In Plaintiff's August 4, 2023 complaint, California company CreatorIQ chose to pursue numerous claims against California company Traackr, Inc. ("Traackr") and Traackr employee Ben Staveley under California and New York law. As Plaintiff belatedly concedes, pursuit of a claim under California's Uniform Trade Secrets Act ("CUTSA") would preempt many of the tort claims they wish to pursue.[1] On October 17, 2023, Traackr and Mr. Staveley moved to dismiss those preempted claims, at which point CreatorIQ could have spared the parties considerable resources by offering the proposal they now submit—namely, to "withdraw its California law-based causes of actions if the parties stipulate that New York law applies to all of CreatorIQ's causes of action," save a breach-of-contract claim where the contract itself calls for the application of California law.[2] Instead, Plaintiff doubled down, submitting an amended complaint that included the same New York and California claims (and adding one additional claim), hoping to keep all options open at Traackr's expense.

Only after Traackr again moved to dismiss Plaintiff's preempted claims did Plaintiff offer to pick a lane, apparently recognizing that one may not credibly argue that California law does not apply while simultaneously pursuing several causes of action under that state's laws. While Defendants cannot agree that the facts alleged in Plaintiff's Amended Complaint support the application of New York law, Defendants will stipulate to the application of New York law in order to move this case forward so that Plaintiff's allegations will be put to the test sooner than later. Litigation should not be a tactic to gain an advantage over a competitor succeeding on the

---

[1] ECF No. 29, Plaintiff's Memorandum of Law in Opposition to Defendants' Partial Motion to Dismiss ("Opp."), at 8.

[2] *Id.* at 16 n.1.

sf-5692471

merits of its superior product offering, and as the Court will see soon enough, CreatorIQ's core allegations cannot stand up to factual scrutiny. For that reason, Traackr and Mr. Staveley limit this memorandum to addressing Plaintiff's arguments concerning its Computer Fraud and Abuse Act ("CFAA") claim, and respectfully request that the Court hold a status conference at its earliest convenience to set a discovery schedule so that lack of support for Plaintiff's allegations may be exposed.

## II.    Plaintiff's CFAA Claim Should Be Dismissed as a Matter of Law.

For an investigation to satisfy the loss requirement of the CFAA, it must be undertaken to investigate the scope of possible technological harm, not merely the scope of information accessed. The authority upon which Plaintiff relies does not offer a path around this requirement. As Plaintiff does not and cannot allege that it undertook its forensic analysis to identify damage to its computer systems, Plaintiff's CFAA claim should be dismissed as a matter of law.

### A.    Plaintiff does not accurately represent the state of the law, which requires investigation expenses to be tied to a possibility of technological harm to satisfy the CFAA's loss requirement.

Plaintiff's argument that the CFAA's "damage or loss" requirement can be satisfied by pleading a loss stemming from a damage assessment or remedial measures misses the point. As the cases upon which Plaintiff relies make clear, the CFAA's damage or loss requirement demands a *particular kind of loss* stemming from a damage assessment or remedial measures— namely, costs incurred in investigating damage done to computer systems.

Judge Gardephe's opinion in *Reis, Inc. v. Spring11 LLC* is instructive. Plaintiff cites *Reis* for the proposition that damage can stem from remedial measures absent actual damage.[3] But

---

[3] *See* Opp. at 20, citing *Reis, Inc. v. Spring11 LLC*, No. 15 Civ. 2836 (PGG), 2016 WL 5390896, at *8 (S.D.N.Y. Sept. 26, 2016). Plaintiff's reliance on *Ipreo Holdings LLC v. Thomson Reuters Corp.*, No. 09 Cv. 8099 (BSJ), 2011 WL 855872, at *7 (S.D.N.Y. Mar. 8, 2011) likewise does not advance Plaintiff's argument. Defendants here are not arguing, as defendants did in *Ipreo*, that an investigation can *never* satisfy the loss requirement absent some actual

Plaintiff fails to share the ultimate holding of *Reis*, a dismissal of a CFAA claim because plaintiff

there, as here, failed to allege the kind of damage investigation covered by the CFAA:

> Because Spring11 used the Reis Database in exactly the same manner that an authorized user would – by accessing the database via an official username and password – Plaintiffs' investigation focused **not on damage to Reis's systems**, but rather on "identif[ying] ... user[s] and determin[ing] whether [they were] acting pursuant to a duly issued license either by way of a Reis Subscriber Agreement or as a registered user paying for reports as they are accessed and downloaded from Reis.com. **In sum, Plaintiffs' costs stem from their efforts to identify those who had obtained unauthorized access to the Reis Database, and not from any effort to investigate damage done to Reis computer systems or the Reis Database**. . . Plaintiffs have not pled facts demonstrating that they incurred costs in investigating damage done to their computer systems.[4]

As the Court in *Van Buren v. United States* explained: "Limiting damage and loss in this

way makes sense in a scheme aimed at preventing the typical consequences of hacking."[5] And as

Plaintiff concedes, the requirement that loss under the CFAA must relate specifically to damages

to a plaintiff's computer systems was not eliminated by the Supreme Court's decision in *Van

Buren v. United States*.[6] Indeed, *El Omari v. Buchanan*[7]—another case on which Plaintiff

misplaces reliance—demonstrates that *Van Buren* reaffirms unambiguously the distinction

already recognized in this District between general investigation costs and investigations

specifically tied to damage to computer systems: "[W]hen determining whether certain costs fall

under loss, the focus is on the connection between the plaintiff's response and **damage to or**

---

underlying damage, but only that, as supported by the cases cited herein and in Defendants' Motion to Dismiss, the investigation must be tied to a concern regarding technological harms.

[4] *Reis, Inc.*, at *9-10 (emphasis added).

[5] *Van Buren v. United States*, 539 U.S. ----, 141 S.Ct. 1648, 1660 (2021) (internal quotations removed).

[6] Opp. at 21-22 (*Van Buren* "did nothing to alter the existing caselaw in this district.").

[7] Opp. at 22, citing *El Omari v. Buchanan,* No. 20 Civ. 2601 (VM), 2021 WL 5889341, at *14 (S.D.N.Y. Dec. 10, 2021).

**impairment of the protected computer**."[8] The *El Omari* court granted defendants' motion to dismiss because, "[w]hile El Omari now argues that he incurred attorneys' fees and investigation costs related to Alison's conduct, there are no factual allegations in the Amended Complaint connecting these costs to any damage to his computer itself. El Omari therefore also fails to plausibly allege he suffered the requisite loss needed to maintain a CFAA claim."[9] As set forth below, Plaintiff's Amended Complaint fails for the same reason even under the most generous reading of Plaintiff's allegations.

Plaintiff's out-of-district, pre-*Van Buren* decisions do not change the current state of the applicable law and are in contrast with a wealth of post *Van Buren* cases that require alleged loss to be tied to a possibility of technological damage.[10] For example, Plaintiff relies on the Western District of New York's pre-*Van Buren* decision in *Irth Solutions*, in which investigation costs did satisfy the loss requirement.[11] But in the two cases *Irth* relies on from this District, the

---

[8] *El Omari*, at *14 (emphasis added), citing *Better Holdco, Inc. v. Beeline Loans, Inc.*, No. 20 Civ. 8686, 2021 WL 3173736, at *3 (S.D.N.Y. Jul. 26, 2021).

[9] *Id.*

[10] *See, e.g.*, *CCC Info. Servs., Inc. v. Tractable, Inc.*, No. 18 CV 7246, 2023 WL 415541, at *3 (N.D. Ill. Jan. 25, 2023) ("Plaintiff has failed to plausibly allege that its investigation into defendant's access to, and misappropriation of, CCC ONE was related to the possibility of technological damage."); *Saffron Rewards, Inc. v. Rossie*, No. 22-cv-02695-DMR, 2022 WL 2918907, at *8 (N.D. Cal. Jul. 25, 2022) ("The complaint does not articulate any technological harm or interruption to Saffron's computer-related services, nor that Saffron conducted any damages assessments or data restorations in response to Rossie's withholding of the Company Accounts."); *CoStar Grp., Inc. v. Leon Cap. Grp., LLC*, No. 21-cv-2227 (CRC), 2023 WL 5133182, at *5 (D.D.C. Aug. 10, 2023) ("Absent from the complaint are any allegations that Leon Capital altered the data, corrupted any files, diminished the database's performance, or restricted access to the platform for other users. Accordingly, CoStar cannot claim a loss based on the need to conduct a damage assessment or data restoration efforts in response to Leon Capital's customary, but perhaps unauthorized, use of the database."); *Fraser v. Mint Mobile, LLC*, No. C 22-00138 WHA, 2022 WL 2391000, at *2 (N.D. Cal. Jul. 1, 2022) ("But these fees were not related to remedying technological harms inflicted on the breached computer or system. Instead, they 'flow[ed] from the use of unlawfully obtained information.'"); *Deck v. Courtney*, No. 1:21-cv-01078-JPH-MJD, 2021 WL 3474043, at *2 (S.D. Ind. Aug. 6, 2021) ("Mr. Deck has not alleged that he incurred expenses in assessing, investigating, or responding to computer impairment caused by a violation of the CFAA or in restoring affected data.").

[11] Opp. at 21; *Irth Sols., LLC v. Apex Data Sols. & Servs., LLC*, No. 18-CV-6884-FPG-MJP, 2020 WL 13180371, at *5 (W.D.N.Y. Apr. 15, 2020).

sf-5692471

investigations at issue examined possible technological damage.[12] Simply put, Plaintiff's Amended Complaint relies on an overly broad reading of the CFAA's loss requirement that courts in this District (among many others) have unambiguously rejected.

### B.    Plaintiff's Amended Complaint fails to allege that its forensic analysis was tied to any technological harm.

Plaintiff fails to allege that its investigation was tied to possible technological harms. Even as Plaintiff describes its own allegations, CreatorIQ "hired a third-party forensic expert … to investigate Staveley's improper actions and conduct a damage assessment."[13] Plaintiff does not allege that it engaged an expert to assess damages to any *computer systems*—as the CFAA requires—presumably because that is not the work for which Plaintiff's expert was engaged.

In fact, the Amended Complaint is entirely devoid of allegations of any technological harm—*i.e.*, harm to CreatorIQ's computer systems—or even a concern about such harm prompting the engagement of a forensic expert. Plaintiff alleges Mr. Staveley employed a username and password to access accounts hosted on a third-party cloud-based customer management database, and that he accessed "protected computers and databases" and "viewed and obtained CreatorIQ's trade secret, proprietary, and/or confidential information."[14] Plaintiff tellingly never offers any allegations signaling any concern regarding the technological wellbeing of their own, or even Hubspot's, databases. It follows, then, that CreatorIQ hired a

---

[12] *See Irth*, 2020 WL 13180371 at *4, citing *Kaufman v. Nest Seekers, LLC*, No. 05 CV 6782(GBD), 2006 WL 2807177, at *8 (S.D.N.Y. Sep. 26, 2006) (in which the court clarified, "Although certain of these expenditures may not fall within the ambit of a loss for purposes of § 1030, the costs involved in investigating the damage to the computer system may constitute such a loss."); also citing *Univ. Sports Publ'ns Co. v. Playmakers Media Co.*, 725 F. Supp. 2d 378, 387-88 (S.D.N.Y. 2010) (finding an audit constituted loss under the statute in which the audit "sought to identify evidence of the breach, assess any damage it may have caused, and determine whether any remedial measures were needed")).

[13] Opp. at 23; *see also* AC ¶¶ 60, 183-184 ("CreatorIQ was forced to retain a forensic expert to conduct a damage assessment and further investigate the scope and extent of the unauthorized access and determine the harm inflicted.").

[14] AC ¶¶ 179-180.

sf-5692471

forensic expert to determine damage related to the scope and extent of Mr. Staveley's alleged access; not to determine the possible damage done to CreatorIQ's computer systems. Merely using the words "conduct a damage assessment" does not establish that such assessment was related to technological damage.[15]

Furthermore, it is not clear that Plaintiff *could* plausibly allege that its investigation was related to possible technological harms to its database. Just as in *Reis*, Mr. Staveley allegedly accessed the Hubspot database "in exactly the same manner that an authorized user would—by accessing the database via an official username and password."[16] Such access does not ordinarily implicate a concern regarding technological harm. Additionally, Hubspot is a cloud-based subscription software and CreatorIQ maintains accounts "within Hubspot's software system."[17] Plaintiff provides no information about how its expert examined potential damage on this third-party cloud-based software system or whether CreatorIQ even maintains the software system.

In short, Plaintiff alleges harms related to the alleged *acquisition* and *use* of proprietary information, not damage to any computer system. Thus, any alleged "damage assessment" was not related to possible technological harm and cannot form the basis of a CFAA claim. "To hold otherwise would eviscerate the requirement that damage be related to a technological harm."[18]

## CONCLUSION

For the reasons set forth above, Plaintiff's CFAA should be dismissed as a matter of law, and the parties should commence discovery as soon as is practicable to test Plaintiff's claims under New York law.

---

[15] *See Reis*, 2016 WL 539086 at *9 (similar language in the complaint, "conduct an investigation into the intrusion and a damages assessment" did not survive motion to dismiss); *compare* AC ¶¶ 60, 183.

[16] *See Reis*, 2016 WL 5390896, at *9.

[17] AC ¶¶ 47-48.

[18] *Better Holdco,* 2021 WL 3173736, at *4.

sf-5692471

Dated: New York, New York
      December 22, 2023

MORRISON & FOERSTER LLP

By: */s/ Michael Birnbaum*
    Michael Birnbaum
    250 West 55th Street
    New York, New York 10019
    Telephone: (212) 468-8000
    Facsimile: (212) 468-7900
    Email:  MBirnbaum@mofo.com

    Arturo J. González (*Pro Hac Vice*)
    Meredith Angueira (*Pro Hac Vice*)
    425 Market Street
    San Francisco, California 94105
    Telephone: (415) 268-7000
    Facsimile: (415) 268-7522
    Email:  AGonzalez@mofo.com
            MAngueira@mofo.com

    Attorneys for Defendant TRAACKR, INC.

MORITT HOCK & HAMROFF LLP

By: */s/ Stephen J. Ginsberg*
    Stephen J. Ginsberg
    400 Garden City Plaza
    Garden City, New York 11530
    Telephone: 516-873-2000
    Facsimile: 516-873-2010
    Email: sginsberg@moritthock.com

    Attorneys for Defendant Ben Staveley

sf-5692471